UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>)<br>Plaintiff, )<br>v. )<br>)<br>ONE GOLD RING WITH CARVED )<br>GEMSTONE, AN ASSET OF ISIL, )<br>DISCOVERED ON ELECTRONIC )<br>MEDIA OF ABU SAYYAF, )<br>PRESIDENT OF ISIL ANTIQUITIES )<br>DEPARTMENT, *et al.* )<br>)<br>Defendants. )<br>_____ ) | Civil Action No. 16-cv-02442-TFH |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR
ENTRY OF DEFAULT JUDGMENT AND ORDER OF FORFEITURE**

On December 15, 2016, the plaintiff United States government commenced this civil forfeiture action *in rem* against defendant property consisting of One Gold Ring with Carved Gemstone, an Asset of ISIL, discovered on electronic media of Abu Sayyaf, President of ISIL Antiquities Department, *et al.* (collectively, the "Defendant Properties") pursuant to 18 U.S.C. § 981(a)(1)(G)(i), which are forfeitable as foreign assets of ISIL and as foreign assets affording a source of influence, as ISIL has and is engaged in planning and perpetrating federal crimes of terrorism as defined in 18 U.S.C. § 2332b(g)(5). *See* Complaint, ECF No. 1.

On December 6, 2017, the plaintiff filed a Verified Amended Complaint for Forfeiture *In Rem* against the Defendant Properties. *See* Amended Complaint, ECF No. 6.

**FACTUAL BACKGROUND**

On October 15, 2004, al-Qa'ida in Iraq ("AQI"), then known as Jam'at al Tawhid wa'al-Jihad, was designated as a Specially Designated Global Terrorist Organization under Executive

Order ("E.O.") 13224. *See* ECF No. 6. On May 15, 2014, AQI's designation was amended to add the alias "Islamic State of Iraq and Syria" as its primary name, as well as other aliases. On September 21, 2015, the Secretary of State added the following aliases to the ISIL listing: Islamic State, ISIS, and ISIL. ISIL has called for numerous terrorist attacks in Syria and Iraq, as well as other parts of the world, including the United States.

ISIL has controlled large swathes of land in Syria and Iraq. This includes multiple United Nations Educational, Scientific and Cultural Organization ("UNESCO") World Heritage Sites and other sites that contain archaeological and ethnological materials that are important to the cultural heritage of the people of Syria and Iraq. As noted in the amended complaint and the agent's affidavit in support of the issuance of an arrest warrant, *See* ECF No. 5-1, ISIL created a sophisticated system for extracting wealth from these resources.

The United States conducted a raid against Abu Sayyaf, a notorious ISIL leader, near Deir Ezzor, Syria in May 2015. The United States recovered data, including documents and photographs, from electronic media during this raid. These documents revealed a significant amount of information about the organizational structure of ISIL and Abu Sayyaf's position within the network.

Specifically, these documents revealed that ISIL generates a significant portion of its revenue from its control of territory and has established formal governance structures for extracting wealth from territory under ISIL control. One of the departments ISIL established to extract wealth from its territory is the Ministry of Natural Resources, Department of Antiquities ("Antiquities Department"). In multiple documents written on ISIL letterhead, Abu Sayyaf referred to himself as the President of this Department. *See* ECF No. 1, Attachments B-1 to B-5, and C. ISIL

leadership described Abu Sayyaf's expertise in the field of antiquities and managing the people trafficking these items. *See id.*, Attachment E.

The Antiquities Department levied a 20% tariff on the sale of antiquities. *See* ECF No. 1, Attachments B, E, and F. This was corroborated by a receipt book recovered from the raid of Abu Sayyaf's compound, which revealed three receipts showing that Abu Sayyaf collected $211,060 (in U.S. Dollars) via the 20% tariff. *See* ECF No. 1, Attachments B-2, B-3, and B-5. The proceeds from the 20% tariff were deposited into "the Treasury." *See* ECF No. 1, Attachment H1. "[T]he Treasury" is a reference to a centralized depository of finances belonging to ISIL, from which ISIL pays its operational expenses. These expenses include paying for activities, including its propaganda calling for attacks against others, including terrorist attacks against United States citizens.

Documents discovered in the Abu Sayyaf raid gave additional insight into how Abu Sayyaf and his subordinates exploited areas under ISIL control. Receipts revealed that extortion payments were often in U.S. dollars. *See* ECF No. 1, Attachments B-2, B-3, and B-5. Abu Sayyaf considered excavation sites located in ISIL-controlled areas to be the property of the Antiquities Department. Abu Sayyaf retained the means to enforce the policies he enacted, including by having the ability to arrest individuals excavating archeological objects without authorization from the Antiquities Department. *See id.*, Attachments C and E.

U.S. authorities recovered multiple antiquities in Abu Sayyaf's possession during the raid. *See* ECF No. 1, Attachment D. Those antiquities were seized, and later returned to the Government of Iraq. Many of the antiquities seized at the time of the raid appeared to have been in the process of being sold internationally. For example, the antiquities were cleaned and maintained in a manner consistent with the preparation for sale. Additionally, Abu Sayyaf's electronic media had

multiple photographs of other antiquities similarly staged in a manner consistent with the sale of antiquities. *See* ECF No. 5-1

Abu Sayyaf's antiquities trafficking directly financed ISIL. In a document written on ISIL letterhead and signed by Abu Sayyaf as the President of the Antiquities Department, Abu Sayyaf asked another ISIL member to transfer an archaeological object to him. *See* ECF No. 1, Attachment I. Abu Sayyaf indicated that he wanted to sell the archaeological object and would transfer the proceeds derived from the sale of the object to the Treasury. *See* Attachment I. As stated above, the Treasury is the centralized depository of finances belonging to ISIL, from which ISIL funds its terrorist activities.

At all relevant times to the complaint, ISIL maintained a strong foothold across Deir ez-Zor, including the site of Dura Europos. ISIL's Antiquities Department claimed the right to derive revenue from seized caches of antiquities stored in Deir ez-Zor. On January 28, 2014, the Syrian Directorate General of Antiquities and Museums (DGAM) reported that the looters were using "electronic devices," and had apparently uncovered "frescos [sic], pottery, stone statues, silver and bronze coins and gold items (bracelets, rings)." *See* ECF No. 1. Satellite imagery from 2104 and 2015 revealed that the entire site of Dura Europos was severely affected by looting, such that large sections of the site were completely unrecognizable. Several of the defendant properties were excavated from Dura Europos. ECF No. 1.

## STANDARDS FOR ENTRY OF DEFAULT JUDGMENT

In cases where the claim is not for a "sum certain" or a sum that can be computed with certainty, the party seeking a default judgment must apply to the court. Fed. R. Civ. P. 55(b)(2);[1]

---

[1] A default judgment cannot be entered against an unrepresented minor or incompetent person, *see* Fed. R. Civ. P. 55(b)(2), but neither exception applies to Defendant Properties 1 and 3. *See* Complaint (ECF 1) at ¶¶ 10, 12.

*Canady v. Erbe Elektromedizin GMBH*, 307 F. Supp. 2d 2, 8-9 (D.D.C. 2004); *United States v. Gant*, 268 F. Supp. 2d 29, 32 (D.D.C. 2003). The court has the power to enter default judgment "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules." Fed. R. Civ. P. 55(a); *Int'l Painters & Allied Trades Indus. Pension Fund v. Zak Architectural Metal & Glass, LLC*, 635 F. Supp. 2d 21, 23 (D.D.C. 2009) (citing *Keegel v. Key W. & Caribbean Trading Co.*, 627 F.2d 372, 375 n. 5 (D.C. Cir.1980)). This authority applies equally in the context of a civil forfeiture action. *See, e.g., United States v. $23,000 in U.S. Currency*, 356 F.3d 157, 163 (1st Cir. 2004) (Rule 55 applies equally in the civil forfeiture context); *United States v. $6,500.00 in U.S. Currency*, No. 1:10-cv-327, 2010 WL 4365886, at *1 (E.D. Tex. Nov. 2, 2010), *report & recommendation adopted sub nom. United States v. & 6,500.00 in U.S. Currency*, No. 1:10-CV-327, 2010 WL 4365890, at *1 (E.D. Tex. Nov. 3, 2010). Default judgment is available "when the adversary process has been halted because of an essentially unresponsive party . . . [as] the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights." *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir.1980) (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C.Cir.1970)).

Although there is a general policy favoring decisions on the merits, if potential claimants fail to respond to a complaint, "a decision on the merits is impractical, if not impossible." *United States v. Approximately $45,860 in U.S. Currency*, No. 14-CV-03801-JCS, 2015 WL 1387468, at *4 (N.D. Cal. Mar. 24, 2015). "A denial of default judgment would prejudice the government in that it would be required to expend further time and effort in an action where no claimants [] have appeared. Without a default judgment, the government may be without recourse altogether."

*United States v. Real Prop. & Improvements Located at 929 Clay St., Unit #7, S.F., CA*, No. 15-CV-00010-JD, 2015 WL 3547256, at *3 (N.D. Cal. June 5, 2015).

The court's primary inquiry when considering default is whether notice has been adequately served, and if any party filed a timely claim. *See United States v. $4,620 in U.S. Currency*, 779 F. Supp. 2d 65, 67 (D.D.C. 2011) (default was appropriate because the government "provided sufficient notice of the seizure of the defendant property," and no party filed a timely claim); *see also United States v. Remington, Model 58, 12 Gauge Shotgun*, No. 1:11-CV-330, 2012 WL 1466684, at *1 (E.D. Tex. Feb. 7, 2012), report and recommendation adopted, No. 1:11-cv-330, 2012 WL 1466682 (E.D. Tex. Apr. 26, 2012) (default judgment entered upon showing government's compliance with Supplemental Rule G(4)); *United States v. 1999 Lexus GS400*, No. C 05–1139, 2007 WL 1056791, *2-3 (N.D. Cal. 2007) ("Default may be entered upon a showing that: (a) notice has been given as required by Admiralty Local Rule 6–1; (b) the time to answer has expired; and (c) no one has appeared to claim the property.").

Assuming proper notice, the court's second consideration before entering default judgment is whether the complaint establishes a reasonable belief of forfeitability. *See United States v. $1,071,251.44 of Funds Associated with Mingzheng Int'l Trading Ltd.*, No. 17-cv-01166, 2018 WL 3949962, at *4 (D.D.C. June 29, 2018) (*citing United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 571 F. Supp. 2d 1, 16 (D.D.C. 2008), *report and recommendation adopted*, No. 17-CV-1166, 2018 WL 3941949 (D.D.C. Aug. 15, 2018). "Default establishes the defaulting party's liability for the well-pleaded allegations of the complaint." *Boland v. Smith & Rogers Constr. Ltd.*, 201 F. Supp. 3d 144, 147 (D.D.C. 2016); *see also Int'l Painters & Allied Trades Indus. Pension Fund v. Dettrey's Allstate Painting, LLC*, 763 F. Supp. 2d 32, 34 (D.D.C. 2011) (same) (citing *Adkins v. Teseo*, 180 F.Supp.2d 15, 17 (D.D.C. 2001) (same)). A court must treat "the factual

allegations in a complaint, other than those as to damages . . . as conceded by the defendant." *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 (3d Cir.2005); *see also Int'l Painters & Allied Trades Indus. Pension Fund v. R. W. Amrine Drywall Co., Inc.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002) (the "defaulting defendant is deemed to admit every well-pleaded allegation in the complaint" upon entry of default by the clerk) (citation omitted).

## ARGUMENT

### I. This Court Has *In Rem* Jurisdiction

Although the Defendant Properties are located oversees, this Court does not need constructive or actual possession in order to have *in rem* jurisdiction. *United States v. Approximately $1.67 Million In Cash*, 513 F.3d 991, 998 (9th Cir. 2008) ("We find ourselves in agreement with the analysis of the D.C. and Third Circuits. The plain language and legislative history of the 1992 amendments makes clear that congress intended § 1355 to lodge jurisdiction in the district courts without reference to constructive or actual control of the res."). "The language of 28 U.S.C. § 1355(b)(2) makes clear: "wherever property subject to forfeiture under the laws of the united states is located in a foreign country . . . An action or proceeding for forfeiture may be brought in . . . The United States District Court for the District of Columbia." *Id.* "[C]ongress intended the District Court for the District of Columbia . . . To have jurisdiction to order the forfeiture of property located in foreign countries." *United States v. All Funds in Account in Banco Espanol de Credito*, 295 F.3d 23, 27 (D.C. Cir. 2002). "Whether or not a foreign government will ultimately choose to comply with a judicial forfeiture order 'determines only the effectiveness of the forfeiture order of the district courts, *not their jurisdiction to issue those orders*." *United States v. One Gulfstream Jet Aircraft*, 941 F. Supp. 2d 1, 7 (D.D.C. 2013) (quoting *Banco Espanol*, 295 F.3d at 26; *see also United States v. Approximately $1.67 Million in Cash*, 513 f.3d 991, 998 (9th Cir. 2008) ( "the plain language and legislative history of [28 u.s.c. § 1355] makes clear that

congress intended § 1355 to lodge jurisdiction in the district courts without reference to constructive or actual control of the res."); *Contents of Account Number 03001288 v. United States*, 344 F.3d 399, 405 (3d Cir. 2003) (noting that the foreign country's "compliance and cooperation with this forfeiture determines only the effectiveness of the district court's order, not its jurisdiction to issue that order"). Thus, this Court has *in rem* jurisdiction to issue a forfeiture order, regardless of whether the Turkish government or any other authorities comply with any subsequent or prior request for restraint of the property. *See United States v. All Assets Held at Bank Julius Baer*, 772 F. Supp. 2d 205, 211 (D.D.C.2011) (rejecting the claimant's argument that a foreign government's potential refusal to obey a court-issued forfeiture order diminishes the government's Article III standing).

## II. The United States Is Entitled To Entry Of Default Judgment

In this case, the Clerk of Court properly entered default against Defendant Properties pursuant to Rule 55(a), upon the United States' showing that no party pled or otherwise defended this action. *See* Clerk's Entry of Default, ECF 16. Moreover, the well-pleaded allegations of the Complaint establish *prima facie* forfeitability of Defendant Properties.

### A. The United States has satisfied its notice obligations

The Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules") govern civil forfeiture actions *in rem* arising from a federal statute. *See* Supplemental Rule A(1)(B). The Federal Rules of Civil Procedure also apply except to the extent they are inconsistent with the Supplemental Rules. *See* Supp. Rule A(2). Supplemental Rule G(4) governs the process by which the government must serve notice of the complaint. Notice is required to the public via publication, as well as to potential claimants via direct notice.

On January 7, 2017, the government began publication by posting notice on www.forfeiture.gov, an official internet government forfeiture site for the Defendant Properties

listed within the Verified Complaint for Forfeiture *In Rem*. *See* Service by Publication ECF No. 2. Notice was posted on this site for 30 consecutive days. Any verified claim in response to the notice by internet publication to be filed no later than March 9, 2017. *See* Fed. R. Civ. P. Supp. R. G(5)(a)(ii). No party filed a claim, and the time to do so has since expired.

On March 1, 2018, the government began an additional publication by posting notice on www.forfeiture.gov, an official internet government forfeiture site for the Defendant Properties listed within the Verified Amended Complaint for Forfeiture *In Rem*. *See* Service by Publication ECF No. 11. Notice was posted on this site for 30 consecutive days. Any verified claim in response to the notice by internet publication to be filed no later than May 1, 2018. *See* Fed. R. Civ. P. Supp. R. G(5)(a)(ii). No party filed a claim, and the time to do so has since expired.

Supplemental Rule G also requires that the government send direct notice "to any person who reasonably appears to be a potential claimant on the facts known to the government." Supp. Rule G(4)(b)(i). The notice must be sent by means "reasonably calculated to reach the potential claimant." Supp. Rule G(4)(b)(i)(A). The government identified no known potential claimants.

"Reasonable notice" requires only that the government attempt to provide actual notice, but it does not require proof that the notice was received. *See Valderrama v. United States*, 417 F. 3d 1189, 1197 (11th Cir. 2005); *United States v. Funds Up to & Including the Amount of $56,634 in U.S. Currency on Deposit in Banesco Int'l, Panama*, 79 F. Supp. 3d 112, 114 (D.D.C. 2015) (notice was adequate based on public notice on the government's forfeiture website). Where "the government attempted to provide notice and heard nothing back indicating that anything had gone awry, courts have found the government's efforts comply with due process." *Lewis v. United States*, No. 14-cv-496, 2014 WL 6065538, at *6 (S.D. Cal. Nov. 3, 2014) (citing *Jones v. Flowers,* 547 U.S. 220, 226 (2006)). *See also* Supp. Rule G(4)(b)(iv) ("[a] potential claimant who had actual

notice of a forfeiture action may not oppose or seek relief from forfeiture because of the government's failure to send the required notice").

In this case, the United States satisfied its notice obligations by publishing its action on the government's forfeiture website. Additionally, this action was the subject of much international press coverage, creating a reasonable inference that the potential claimants had actual notice of the forfeiture action. *See e.g.*, https://www.wsj.com/articles/u-s-tries-to-seize-antiquities-looted-by-islamic-state-and-used-to-fund-terrorism-1512584097.

### B. Default judgment is appropriate because the Complaint provides a well-pleaded basis for relief.

The well-pleaded facts in the United States' Complaint—supplemented and supported by the agent's probable cause affidavit—establish a reasonable belief of forfeitability on which the Court may enter judgment. As noted in these pleadings, ISIL has controlled much of the territory in Syria and Iraq and extorts antiquities excavators working in ISIL-controlled territory. Images of all of the Defendant Properties were found on electronic media of Abu Sayyaf, who was the President of ISIL's Antiquities Department prior to being killed in a U.S. operation. Additionally, based on their historical characteristics, the Defendant Properties were excavated from areas under ISIL control. Other documents on Abu Sayyaf's hard drive indicate that Abu Sayyaf, on behalf of ISIL, received at least 20% of the proceeds of items excavated in ISIL-controlled areas and in some instances personally sold the archeological items. These transactions were often in U.S. dollars. Based on such evidence, the Defendant Properties are properties associated with ISIL, a designated foreign terrorist organization.

The facts, which must be taken to be true, sufficiently plead a reasonable belief of forfeitability, because the United States has specified:

- the perpetrators of the terrorist activities (ISIL and Abu Sayyaf), *see e.g.,* ECF 5-1;

- the victim of the conspiracy (the United States), *see e.g.*, ECF 6 at ¶ 21;

- the goal of the terrorists (to generate funds from the sale of antiquities, which are then deposited in the Treasury to pay for terrorist activities), *see e.g., id.* at ¶¶ 15-21;

- the means of effectuating the goals (the collection of the extorted funds/tariffs), *see e.g., id.*; and

- which members of ISIL were responsible for these acts (Abu Sayyaf), *see e.g., id.* at ¶ 11-15.

*See All Assets Held In Account No. XXXXXXXX*, 83 F. Supp. 3d at 373 (complaint sufficiently pled a reasonable belief of forfeitability, because the government specified the victim of the alleged fraud; the perpetrators of the alleged fraud; the goal of the fraud; the means of effectuating the fraud; and which members of the fraud were responsible for which acts). 18 U.S.C. § 981(a)(1)(G)(i) empowers the government to seek the forfeiture of property outside the United States, which may have never touched the United States. The broad expanse of this language is for forfeiture actions to reach all property of terrorist organizations. This court is the sole jurisdiction where such litigation is properly lodged. 28 U.S.C. § 1355(b)(2).

Taking the facts of the Complaint and the related affidavit as true, the United States has established that: ISIL has and is engaged in planning and perpetrating federal crimes of terrorism as defined in 18 U.S.C. § 2332b(g)(5); that ISIL used revenue generated from the sale of antiquities to afford it a source of influence; and the Defendant Properties are foreign assets of ISIL. Thus, the United States has established a violation of 18 U.S.C. § 981(a)(1)(G)(i).

This Court has found *probable cause* for forfeiture, a much higher standard than the reasonable belief required here. *See* ECF No. 9.

**WHEREFORE**, the United States respectfully submits this Memorandum of Law in support of its Motion to Enter Default Judgment and enter an Order of Forfeiture.

Respectfully submitted,

JESSIE K. LIU,
UNITED STATES ATTORNEY

By:    */s/Zia M. Faruqui*
Zia M. Faruqui, D.C. Bar No. 494990
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-7117
zia.faruqui@usdoj.gov